UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                No. 04-CR-80412-DT

vs.                                          Hon. Gerald E. Rosen

STEVEN WALLACE,

                Defendant.
_____/

OPINION AND ORDER DENYING DEFENDANT'S
MOTION TO DISMISS FOR SELECTIVE PROSECUTION

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on       May 24, 2005
PRESENT:  Honorable Gerald E. Rosen
                United States District Judge

I. INTRODUCTION

Defendant Steven Wallace is charged in a three-count Indictment with being a felon-in-possession of a firearm, possession of a firearm in furtherance of a drug trafficking crime, and possession with intent to distribute marijuana. The charges against Wallace arise out of a traffic stop effected by Michigan State Police troopers on westbound I-96 near the Greenfield exit in the early hours of the morning of March 9, 2004 for an equipment violation -- a badly damaged driver's side mirror that was hanging off the mount and dangling down the middle of the car door. When Defendant Wallace rolled down the car window, the troopers immediately detected the smell of marijuana.

1

Wallace admitted to the troopers that he had been smoking marijuana at a friend's house just before getting into the car. Wallace was carrying a .22 caliber revolver in his waistband which was discovered by the police when searching his person and upon a search of the car, the officers found a briefcase which contained individually-wrapped packages of marijuana, a small electronic scale, and twenty-two rounds of ammunition for the revolver.

Presently before the Court is Defendant's Motion to Dismiss for Selective Prosecution and Discovery. This motion is based on the fact that Wallace's case, which originated in the state criminal justice system, was referred for federal prosecution under Project Safe Neighborhoods, a national initiative aimed at controlling gun violence. Defendant claims that a disproportionate number of African-American defendants in Wayne County are prosecuted under the federal system under Project Safe Neighborhoods and that this establishes a violation of the equal protection component of the Due Process Clause of the Fifth Amendment.

The Court held a hearing on Defendant's Motion on March 23, 2005. After hearing the arguments of counsel, the Court noted that Defendant had failed to produce any evidence that similarly-situated non-minority defendants were not referred for federal prosecution. Nonetheless, the Court took the matter under advisement and allowed Defendant until April 15, 2005 to come forward with such evidence. However, as of this date Defendant has not produced any evidence of similarly-situated defendants being treated differently, nor has Defendant requested an extension of time within which to do

so. Therefore, the Court will decide this matter on the record developed to date.

## II. DISCUSSION

It is undisputed that Defendant Wallace's case originated in the Michigan state criminal justice system, but was referred for federal prosecution under "Project Safe Neighborhoods." Project Safe Neighborhoods is a national initiative aimed at controlling gun violence. It was implemented in the Eastern District of Michigan in 2002. It is Defendant's position that African-American defendants with firearms cases are disproportionately being referred for federal prosecution under Project Safe Neighborhoods. Defendant contends that *if* under Project Safe Neighborhoods African-American defendants are being diverted from state to federal prosecution while white defendants remain in state court, this would establish evidence of a violation of equal protection through disparate racial impact and selective prosecution. Defendant, however, has not come forward with any evidence to support this contention.

The Attorney General and the United States Attorneys retain "broad discretion" to enforce the Nation's criminal laws. *United States v. Armstrong*, 517 U.S.456, 464, 116 S.Ct. 1480, 1486 (1996), quoting *Wayte v. United Sates*, 470 U.S. 598, 607, 105 S.Ct. 1524, 1530-31 (1985). They have this latitude because they are designated by statute as the President's delegates to assist in the discharge of the President's constitutional responsibility to "take Care that the Laws be faithfully executed." *Armstrong* at 464, quoting U.S. Const., Art. II, § 3. As a result, "[t]he presumption of regularity supports"

prosecutorial decisions and, "in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *Id.*

A prosecutor's discretion, however, is "subject to constitutional constraints." *Id.* One of these constraints, imposed by the equal protection component of the Due Process Clause of the Fifth Amendment, is that the decision whether to prosecute may not be based on "an unjustifiable standard such as race, religion or other arbitrary classification." *Id.* A defendant may demonstrate that the administration of a criminal law is "directed so exclusively against a particular class of persons. . . with a mind so unequal and oppressive" that the system of prosecution amounts to "a practical denial" of equal protection of the law. *Id.* at 465, quoting *Yick Wo v. Hopkins*, 118 U.S. 356, 373, 6 S.Ct. 1064, 1073 (1886). However, the prosecutor's actions are presumed to comport with constitutional requirements. Thus, in order to dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present "clear evidence to the contrary." *Armstrong* at 465.

To establish a claim of selective prosecution, a criminal defendant must demonstrate that the federal prosecutorial policy "had a discriminatory effect <u>and</u> that it was motivated by a discriminatory purpose."*Id.*, quoting *Wayte v. United States, supra*, 470 U.S. at 608. *See also United States v. Jones*, 399 F.3d. 640, 645 (6th Cir., Mar. 3, 2005) (*"Jones II"*) ("To prevail on a selective prosecution claim, a defendant must show that the federal prosecutorial policy had both a discriminatory effect and a discriminatory

intent.")

"To establish discriminatory intent in a case alleging selective prosecution based on race, a claimant must show that the prosecutorial policy was motivated by racial animus; to establish discriminatory effect, the claimant must demonstrate that similarly situated individuals of a different race were not similarly prosecuted." *Id*. And, because of the special considerations implicated by judicial inquiry into an exercise of prosecutorial discretion, the elements of a selective prosecution claim must be satisfied by "exceptionally clear proof." *McCleskey v. Kemp*, 481 U.S. 279, 297 (1987). As the Supreme Court explained in *Armstrong*,

> No latitude of intention should be indulged in a case like this. There should be certainty to every intent. [Defendant] seeks to set aside a [prosecutorial policy]. . ., not on the ground that it is unconstitutional on its face, not that it is discriminatory in its tendency and ultimate actual operation. . ., but that it was made so by the manner of its administration. This is a matter of proof, and no fact should be omitted to make it out completely when the power of a Federal court is invoked. . . to challenge an exercise of one of the core powers of the Executive Branch of the Federal Government, the power to prosecute.

517 U.S. at 466-467 (Citations omitted.)

The justifications required for a rigorous standard for the elements of a selective-prosecution claim thus require a correspondingly rigorous standard for discovery in aid of such a claim. *Armstrong, supra*, 517 U.S. at 468. In *Armstrong*, the Supreme Court held that to be entitled to an order for discovery to establish a selective prosecution claim, a defendant must first produce "some evidence tending to show the existence of the

5

essential elements of the defense, discriminatory effect and discriminatory intent." *Id*. With respect to "discriminatory effect," the *Armstrong* Court held that a selective prosecution claimant is required to produce "some evidence of differential treatment of similarly situated members of other races or protected classes." *Id.* at 470.  The Court in *Armstrong* found that the defendants there did not meet this threshold burden and accordingly held that they were not entitled to discovery in support of their claim.  The Court explained,

> [I]f the claim of selective prosecution were well founded, it should not have been an insuperable task to prove that persons of other races were being treated differently than respondents.  For instance, respondents could have investigated whether similarly situated persons of other races were prosecuted by the State of California and were known to federal law enforcement officers, but were not prosecuted in federal court.  We think the required threshold -- **a credible showing of different treatment of similarly situated persons** -- adequately balances the Government's interest in vigorous prosecution and the defendant's interest in avoiding selective prosecution.

*Id.* at 470.

The defendants' theory in *Armstrong* was that more blacks were disproportionately selected for federal prosecution for crack cocaine distribution. They presented as their threshold evidence a "study" listing 24 federal defendants, their race, and whether they were being prosecuted in federal court for dealing cocaine and/or crack, and the status of each case.  The Supreme Court determined that the defendants' "study" did not constitute "some evidence tending to show the existence of the essential elements of" a selective prosecution claim.  *Id.*   The Court explained:

> The study failed to identify individuals who were not black and could have been prosecuted for the offenses for which respondents were charged, but were not so prosecuted.

*Id.*

Defendant here relies upon similar evidence. Defendant Wallace relies upon a listing of 61 federal firearms cases pending in the Detroit Federal Defender Office which originated in state court. Of those 61 prosecutions, 55 of the defendants are African-American. However, like the list of federal defendants in the *Armstrong* case, Defendant Wallace's list "fail[s] to identify individuals who were not black and could have been prosecuted [in federal court] for the offenses for which he was charged, but were not so prosecuted."

Defendant Wallace also misrepresents the holding of *United States v. Jones*, 159 F.3d 969 (6th Cir. 1998) ("*Jones I*") on the discovery issue. Defendant suggests that the Sixth Circuit in *Jones I* held that a defendant is entitled to discovery to support his selective prosecution claim even though he had not established a showing of both discriminatory effect and intent. This is not true. In *Jones I,* the Court determined that the defendant was entitled to discovery precisely because he had produced some evidence of <u>both</u> discriminatory intent and discriminatory effect.

The Court first found abundant evidence of discriminatory intent. Prior to the arrest of Jones and his wife, the arresting police officers had t-shirts made with Jones' picture emblazoned on the front accompanied by the printed words, "See ya, wouldn't want to be ya" above the picture, and below, "going back to prison." 159 F.3d at 975. On

the back of the t-shirts appeared a picture of Jones' wife, who was a co-defendant, with the words, "wait on me. . . I am coming, too." *Id.* The officers were wearing the t-shirts when they arrested Jones in August of 1995. *Id.* Over a year later, while Jones was in custody, one of the arresting officers mailed him a postcard while he was on a Carribean vacation that pictured a black woman with a basket of bananas on her head, as a racial insult, and on which the officer had written, "Haven't talked to you since you were in court and lost all of your motions. . . . I'm on vacation and I'll be back on Monday for trial, and chances are good you're going to jail for a long time. See ya. Officer Spence." *Id.* The court found this evidence sufficient to establish a showing of "some evidence of discriminatory intent." *Id.* at 978.

The *Jones* court also found that the defendant had presented some evidence tending to show the existence of discriminatory effect: Jones presented evidence that law enforcement referred only him and his co-defendant for a federal prosecution that involved crack cocaine and failed to refer for federal prosecution eight non-African-Americans who were arrested and ultimately prosecuted in the state court for crack cocaine. *Id*. Although the Court of Appeals noted that this evidence was not sufficient to make out a *prima facie* case of discriminatory effect because Jones had not shown that the eight non-African-Americans were otherwise "similarly-situated," *id*. at 977,[1] the

---

[1] The Sixth Circuit recently delineated the requirements for establishing a *prima facie* claim of discriminatory effect in *Jones II*:

> As for discriminatory effect. . . Jones must show that similarly

8

Court was satisfied that the evidence was sufficient to constitute "some evidence tending to show discriminatory effect" so as to entitle Jones to discovery in aid of his selective prosecution claim. *Id.* at 978.[2]

---

> situated non-African-Americans were not recommended for federal prosecution. As an initial matter, the district court properly identified the appropriate factors for comparison -- propensity in violence, involvement of a firearm, and amount of cocaine base. *See United States v. Daniels*, 142 F. Supp. 2d 140, 144 (D. Mass. 2001) ("Such evidence [of similarity] would include comparison, for example, of the amounts of crack involved in cases with white defendants, their criminal histories, propensity for violence, and any other factors that might justify the higher sentences if they were prosecuted in federal court.")

390 F.3d at 646.

Ultimately, the Court of Appeals concluded in *Jones II* that defendant failed to meet his burden of proof and, accordingly, determined that the district court correctly concluded that discriminatory effect had not been established:

> Here, at best, evidence establishes that only two of the sixty-five non-African-American crack cocaine defendants had firearms, and neither of those defendants had a propensity for violence similar to Jones, at least as shown by their criminal history. Also, other evidence indicates that as a general matter, local law enforcement in Rutherford County recommended thirteen Caucasian criminal defendants for federal prosecution, six of whom were charged with drugs and firearms violations.
> \* \* \*
> . . . [Thus,] the district court committed no clear error in finding that Jones did not establish race-based selective prosecution.

*Id.*

[2] Jones had sought through discovery (1) names and arrest reports from the county sheriff's department for the preceding five years which concerned non-African-American individuals charged with felonious possession or distribution of crack cocaine; (2) names and arrest records from the DEA in Nashville that concerned non-African-American individuals charged with felonious possession or distribution of crack cocaine; and (3)

In this case, Defendant has not produced ***any*** evidence of non-African-American individuals charged with drug and firearms offenses who were known to the federal authorities but not referred for federal prosecution. Thus, Wallace's evidence does not even amount to the evidence accepted as sufficient by the Sixth Circuit to warrant discovery in aid of his claim. His evidence is more akin to the evidence which the defendant presented in *Armstrong* which the Supreme Court found wholly insufficient to entitle him to discovery.

Furthermore, even assuming *arguendo* that Defendant could produce evidence tending to show discriminatory effect, there remains no evidence tending to show discriminatory intent or purpose. As indicated above, to be entitled to discovery, the Defendant must produce some evidence tending to show the existence of both discriminatory effect and discriminatory intent. *United States v. Armstrong, supra*, 517 U.S. at 468. Defendant here has offered no evidence whatsoever of discriminatory intent. In fact, Defendant conceded on the record that he has no evidence concerning intent.[3]

---

the names and docket numbers maintained by the U.S. Attorneys office in Nashville for the preceding five years which concerned non-African-American individuals charged with felonious possession or distribution of crack cocaine. *See Jones I*, 159 F.3d at 975, n. 3.

[3] The Court declines Defendant's invitation to follow Judge Hood's decision allowing discovery in *United States v. Thorpe*, E.D. Mich. No. 03-80329. In *Thorpe*, Judge Hood ordered the government to provide for *in camera* review, the discovery evidence sought by Defendant Thorpe notwithstanding her acknowledgment that the Thorpe failed to produce any evidence tending to show discriminatory intent or

For all of these reasons,

IT IS HEREBY ORDERED that Defendant's request for discovery in aid of his claim of selective prosecution be, and hereby is, DENIED.

Defendant having further failed to even produce the less burdensome "some evidence tending to show the existence of the essential elements" of a selective prosecution claim to entitle him to discovery, it stands to reason that he has not made out a *prima facie* case of selective prosecution so as to warrant dismissal of the indictment against him. Accordingly,

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss for Selective Prosecution also is DENIED.

                s/Gerald E. Rosen
                Gerald E. Rosen
                United States District Judge

Dated: May 24, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 24, 2005, by electronic and/or ordinary mail.

            s/LaShawn R. Saulsberry

---

discriminatory purpose. The Court believes to allow discovery under these circumstances would be contrary to the well-established Supreme Court and Sixth Circuit standards for discovery on a claim of selective prosecution.

11

Case Manager